**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**

**FILED**

SEP 1 0 2019

Clerk, U.S. District and
Bankruptcy Courts

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| v. | : | **CRIMINAL NO. 1:19-cr-00009 (CKK)** |
| | : | |
| **GLEN OMER VIAU,** | : | |
| | : | |
| **Defendant.** | : | |
| | : | |

## STATEMENT OF OFFENSE

Pursuant to Federal Rule of Criminal Procedure 11, the United States and Defendant GLEN

OMER VIAU (Defendant) stipulate and agree that the following facts are true and accurate. These

facts do not constitute all facts known to the parties concerning the charged offense and covered

conduct. This statement is being submitted by the parties to demonstrate that sufficient facts exist

to establish that Defendant committed the offense to which he is pleading guilty.

1.     OCEANWORKS INTERNATIONAL was a privately-held U.S. Company

headquartered in Houston, Texas, with a wholly owned Canadian subsidiary, OCEANWORKS

INTERNATIONAL CORPORATION ("OCEANWORKS CORPORATION"). The U.S. Navy,

headquartered in Washington, D.C., selected OCEANWORKS CORPORATION as the prime

contractor, through the Canadian Commercial Corporation ("CCC"), a Canadian government-

owned company, for the design, construction, and testing of numerous Submarine Rescue Diving

Recompression System (SRDRS) elements. The SRDRS was to be used to assist crewmembers in

distressed submarines. The contract scope of work included the Pressurized Rescue Module (PRM)

System (PRMS). The PRM was a tethered, remotely operated rescue vehicle (RORV). It contained

a transfer skirt that could be used to dock the PRM with the distressed submarine. The PRMS

1

included other elements such as an umbilical winch and a deck cradle. The PRMS could carry up to eighteen personnel rescued from a distressed submarine.

2.      OCEANWORKS CORPORATION modified certain parts of its existing RORV design to meet U.S. Navy specifications prior to delivery to the U.S. Navy in 2007 or 2008. From 2008 until in or around 2017, OCEANWORKS CORPORATION was heavily involved with the ongoing support for the U.S. Navy's submarine rescue operators, and the U.S. Navy requested and paid for extensive technical modifications detailed on numerous technical documents.

3.      OCEANWORKS CORPORATION retained commercial rights in the technical data that it developed for the U.S. Navy, but Defendant was aware that the U.S. Navy also retained certain rights in certain aspects of the technical data and that the U.S. Navy expected its proprietary data to be kept confidential.

4.      In 2016, OCEANWORKS CORPORATION was sold to BEIJING COMPANY, a company based in mainland China. In particular, in or around September and October 2016, OCEANWORKS CORPORATION's shares were sold to BEIJING COMPANY for $15 million USD. For an additional $5 million USD, BEIJING COMPANY acquired OCEANWORKS CORPORATION's assets, which included the intellectual property associated with submarine rescue technology.

5.      Defendant first worked for OCEANWORKS CORPORATION's predecessor company and then OCEANWORKS CORPORATION from 1992 to 2011; he was a project engineer and worked on the development of the PRM. At the time of his resignation in 2011, Defendant held the title of Chief Operating Officer. Defendant was re-hired as President shortly after OCEANWORKS CORPORATION was acquired by BEIJING COMPANY on September

26, 2016. Defendant ultimately reported to BEIJING COMPANY's Chief Executive Officer.

6.     Beginning on or about September 30, 2016, Defendant and OCEANWORKS employees, with the assistance of BEIJING COMPANY, developed a proposal to the People's Liberation Army (PLA) Navy, the Chinese equivalent of the U.S. Navy. This proposal concerned the RORV Project, a submarine rescue vehicle (SRV) to be designed and built by OCEANWORKS and BEIJING COMPANY for the PLA Navy.

7.     On or about October 12, 2016, Defendant met with several Navy employees to discuss, among other things, the sale of OCEANWORKS to a Chinese company. Based on this meeting, Navy personnel understood that OCEANWORKS still had a security program in place so the U.S. Navy information would be firewalled from the new ownership and that the U.S. Navy information would be protected.

8.     From on or about November 4 to on or about November 16, 2016, Defendant was in China meeting with representatives of BEIJING COMPANY. While in CHINA, Defendant sought and received access to OCEANWORKS CORPORATION's archived files regarding the PRMS.

9.     On November 16, 2016, Defendant sent to a BEIJING COMPANY employee via email a presentation concerning strategy options for the PLA Navy RORV Project proposal. One of Defendant's strategy options offered to provide to BEIJING COMPANY detailed information about the type of work OCEANWORKS CORPORATION did for the U.S. Navy.

10.     On or about November 16, 2016, Defendant emailed to PERSON 1 a 17-page presentation. The file was titled "BoD discussion 16 Nov 2016." Slide one of the presentation was titled "[BEIJING COMPANY] – [OCEANWORKS CORPORATION]." On this slide was a bullet

for "Chinese Navy SRS [Submarine Rescue System] Project." Slides 14 through 17 were titled "Chinese Navy RORV Project." Slide 15, under a strategy heading, stated that execution of the plan would consist of, "Detailed information about what [OCEANWORKS CORPORATION] did for US Navy project." Slide 17, under an "Execution Issues" heading, stated the following. "Export permit and timing of US Navy." [OCEANWORKS CORPORATION] will need to apply for an export permit to export the system design & components to China. This will take 6-8 weeks. Preferable we won't start this until after the US Navy contracting issue is resolved. Perception management is important."

11.     On or about November 17, 2016, Defendant received an email from an individual (PERSON 1) who worked for both OCEANWORKS CORPORATION and BEIJING COMPANY regarding the RORV Project. In this email, titled "Chinese SRV project," PERSON 1 wrote that BEIJING COMPANY would present the SRV presentation to PLA Navy personnel the following Tuesday [November 22, 2016], and that this would be the meeting to decide if BEIJING COMPANY had the chance to be the SRV supplier to the PLA Navy. PERSON 1 asked Defendant (and others) to provide "What we did for US Navy and the current shape of the system. As detail[ed] as possible, maybe with some background [on why] we were chose[n]." PERSON 1 also asked for a comparison between the U.S. Navy system and the Chinese system and why the U.S. Navy system was better. PERSON 1 asked for the recipients to send the information to a BEIJING COMPANY employee and copied on the email BEIJING COMPANY's Deputy General Manager for the Military Business Unit.

12.     On November 18, 2016, in response to PERSON 1's email above, Defendant emailed to PERSON 1 and others, in China, a 34-page document titled "[OCEANWORKS

4

CORPORATION] Rescue System Experience," authored by Defendant. The subject line of the email was "Chinese SRV Project." Some of the information contained in this document concerned the U.S. Navy PRM transfer skirt. Defendant wrote that the attached presentation would be a good start for the upcoming discussion. At the time he sent the email, Defendant understood that the email recipients were in China.

13.     Between in or around December 2016 and February 2017, Defendant assisted in making arrangements for PERSON 2, a former employee of OCEANWORKS CORPORATION, to travel to China to assist BEIJING COMPANY in its RORV proposal to the PLA Navy. On or about February 6, 2017, PERSON 2 emailed Defendant and others. The subject line of the email was "Chinese System Requirements," and attached was a document titled "Chinese Navy Requirements." The document referred to the requirements for an RORV rescue system. PERSON 2 asked the email recipients to provide content for a section of the document concerning specifications for the proposed PLA Navy RORV system.

14.     On or about February 8, 2017, an OCEANWORKS CORPORATION mechanical engineer and design supervisor, sent an email to Defendant; PERSON 2; and PERSON 3, an OCEANWORKS CORPORATION mechanical engineer. The subject line of the email was "Chinese RORV Advantages;" attached to the email was a document with a table comparing the surveillance systems of the U.S. Navy's PRM to systems proposed for the PLA Navy's RORV.

15.     On or about February 13, 2017, Defendant received an email from PERSON 2 concerning BEIJING COMPANY's RORV proposal to the PLA Navy. PERSON 2 noted that BEIJING COMPANY was "putting together a comprehensive document on the RORV for the Chinese Navy" to be presented the following week and requested information for various content

sections from the email recipients. PERSON 2 further stated, "Most, if not all, of it could be developed by regurgitating requirements from the PRMS SOW [Scope of Work] and other documents." PERSON 2 requested content related to numerous technical designs.

16.     On or about February 16, 2017, Defendant was copied on an email from PERSON 3 to PERSON 2 (who was in China) attached to which were six documents. At least one of the enclosed multi-page technical drawings was controlled under ECCN 8E620.a, and therefore required an export license before being sent to China. Two of these documents had a U.S. government Distribution statement that stated: "Distribution authorized to U.S. government agencies only. Other requests for this document shall be referred to Commanding Officer, Naval Sea Systems Command (OOC), Arlington, VA 22242." OCEANWORKS CORPORATION willfully shared these documents with Person 2 to assist with the development of its proposal, but OCEANWORKS CORPORATION did not have permission from the U.S. Navy to share these documents.

17.     The Defendant willfully shared and used documents related to the PRMS described above which were used by OCEANWORKS CORPORATION to assist its development of a presentation to the PLA Navy, and Defendant and OCEANWORKS CORPORATION did so without authorization from the U.S. Navy.  The value of the information in issue was less than $1,000.

## DEFENDANT'S ACKNOWLEDGMENT

I have read this factual proffer, understand it, and agree that it is true and accurate. While it is not a complete recitation of all that I did or all that I know, it represents some of my conduct and some of my knowledge concerning my own involvement in illegal activity. No threats have been made to me nor am I under the influence of anything that could impede my ability to understand this factual proffer fully.

Date: _10 Sept 2019_   _____
**Glen Omer Viau**


## ATTORNEY'S ACKNOWLEDGMENT

I have read this factual proffer, reviewed it with my client, and discussed it with my client.

Date: _9/10/19_   _____
**Preston Burton**
**Paige Ammons**
Counsel for Defendant