## UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **CRIMINAL NO. 1:19-cr-00009 (CKK)** |
| | : | |
| **GLEN OMER VIAU,** | : | |
| | : | |
| **Defendant.** | : | |
| | : | |

### GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, hereby respectfully submits its Memorandum in Aid of Sentencing for Defendant Glen Omer Viau. For the reasons set forth below, the government submits that the sentence agreed to in the plea agreement between the parties in this case, filed on September 10, 2019 (ECF No. 45), is an appropriate sentence. Accordingly, we request that the Court accept the plea agreement pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C) and sentence Defendant to a sentence of time served and a $25,000 fine.

### INTRODUCTION

Defendant has pled guilty to Count One of the Information, which charges him with Misdemeanor Conveyance of Government Money, Property, or Records to Defendant's Use and to the Use of Others Without Authority, in violation of Title 18, United States Code, Section 641. While President of OCEANWORKS INTERNATIONAL CORPORATION (OCEANWORKS) and in connection with a proposal by OCEANWORKS to the People's Liberation Army (PLA) Navy, the Chinese equivalent of the U.S. Navy, Defendant willfully shared and used U.S. Navy technical data without authority. The value of the information in issue was less than $1,000.

1

## FACTUAL SUMMARY

### A. Relevant Background on OCEANWORKS INTERNATIONAL

The U.S. Navy, headquartered in Washington, D.C., selected OCEANWORKS as the prime contractor for the design, construction, and testing of numerous Submarine Rescue Diving Recompression System (SRDRS) elements. The SRDRS was to be used to assist crewmembers in distressed submarines. The contract scope of work included the Pressurized Rescue Module (PRM) System (PRMS). The PRM was a tethered, remotely operated rescue vehicle (RORV). It contained a transfer skirt that could be used to dock the PRM with the distressed submarine. The PRMS could carry up to eighteen personnel rescued from a distressed submarine.

In 2016, BEIJING COMPANY, a company based in mainland China purchased OCEANWORKS. In particular, in or around September and October 2016, BEIJING COMPANY bought OCEANWORK's shares for $15 million USD. For an additional $5 million USD, BEIJING COMPANY acquired OCEANWORK's assets, which included the intellectual property associated with submarine rescue technology.

### B. Defendant's Role

Defendant first worked for OCEANWORK's predecessor company and then OCEANWORKS from 1992 to 2011. He was re-hired as President shortly after OCEANWORKS was acquired by BEIJING COMPANY on September 26, 2016. Defendant ultimately reported to BEIJING COMPANY's Chief Executive Officer.

Beginning on or about September 30, 2016, Defendant and OCEANWORKS employees, with the assistance of BEIJING COMPANY, developed a proposal to the PLA Navy. This proposal concerned the RORV Project, a submarine rescue vehicle (SRV) to be designed and built

2

by OCEANWORKS and BEIJING COMPANY for the PLA Navy.

On or about October 12, 2016, Defendant met with several U.S. Navy employees to discuss, among other things, the sale of OCEANWORKS to a Chinese company. Based on this meeting, U.S. Navy personnel understood that OCEANWORKS still had a security program in place so the U.S. Navy information would be firewalled from the new ownership and that the U.S. Navy information would be protected.

From on or about November 4 to on or about November 16, 2016, Defendant was in China meeting with representatives of BEIJING COMPANY. While in CHINA, Defendant sought and received access to OCEANWORK's archived files regarding the PRMS.

On November 16, 2016, Defendant sent to a BEIJING COMPANY employee via email a presentation concerning strategy options for the PLA Navy RORV Project proposal. One of Defendant's strategy options offered to provide to BEIJING COMPANY detailed information about the type of work OCEANWORKS did for the U.S. Navy.

On or about November 16, 2016, Defendant emailed to PERSON 1 a 17-page presentation. The file was titled "BoD discussion 16 Nov 2016." Slide one of the presentation was titled "[BEIJING COMPANY] – [OCEANWORKS]." On this slide was a bullet for "Chinese Navy SRS [Submarine Rescue System] Project." Slides 14 through 17 were titled "Chinese Navy RORV Project." Slide 15, under a strategy heading, stated that execution of the plan would consist of, "Detailed information about what [OCEANWORKS] did for US Navy project." Slide 17, under an "Execution Issues" heading, stated the following. "Export permit and timing of US Navy." [OCEANWORKS] will need to apply for an export permit to export the system design & components to China. This will take 6-8 weeks. Preferable we won't start this until after the US

Navy contracting issue is resolved. Perception management is important."

On or about November 17, 2016, Defendant received an email from an individual (PERSON 1) who worked for both OCEANWORKS and BEIJING COMPANY regarding the RORV Project. In this email, titled "Chinese SRV project," PERSON 1 wrote that BEIJING COMPANY would present the SRV presentation to PLA Navy personnel the following Tuesday [November 22, 2016], and that this would be the meeting to decide if BEIJING COMPANY had the chance to be the SRV supplier to the PLA Navy. PERSON 1 asked Defendant (and others) to provide "What we did for US Navy and the current shape of the system. As detail[ed] as possible, maybe with some background [on why] we were chose[n]." PERSON 1 also asked for a comparison between the U.S. Navy system and the Chinese system and why the U.S. Navy system was better. PERSON 1 asked for the recipients to send the information to a BEIJING COMPANY employee and copied on the email BEIJING COMPANY's Deputy General Manager for the Military Business Unit.

On November 18, 2016, in response to PERSON 1's email above, Defendant emailed to PERSON 1 and others, in China, a 34-page document titled "[OCEANWORKS] Rescue System Experience," authored by Defendant. The subject line of the email was "Chinese SRV Project." Some of the information contained in this document concerned the U.S. Navy PRM transfer skirt. Defendant wrote that the attached presentation would be a good start for the upcoming discussion. At the time he sent the email, Defendant understood that the email recipients were in China.

Between in or around December 2016 and February 2017, Defendant assisted in arranging for PERSON 2, a former OCEANWORKS employee, to travel to China to assist BEIJING COMPANY in its RORV proposal to the PLA Navy. On or about February 6, 2017, PERSON 2

emailed Defendant and others. The subject line of the email was "Chinese System Requirements," and attached was a document titled "Chinese Navy Requirements." The document referred to the requirements for an RORV rescue system. PERSON 2 asked the email recipients to provide content for a section of the document concerning specifications for the proposed PLA Navy RORV system.

On or about February 8, 2017, an OCEANWORKS mechanical engineer and design supervisor, sent an email to Defendant; PERSON 2; and PERSON 3, an OCEANWORKS mechanical engineer. The subject line of the email was "Chinese RORV Advantages;" attached to the email was a document with a table comparing the surveillance systems of the U.S. Navy's PRM to systems proposed for the PLA Navy's RORV.

On or about February 13, 2017, Defendant received an email from PERSON 2 concerning BEIJING COMPANY's RORV proposal to the PLA Navy. PERSON 2 noted that BEIJING COMPANY was "putting together a comprehensive document on the RORV for the Chinese Navy" to be presented the following week and requested information for various content sections from the email recipients. PERSON 2 further stated, "Most, if not all, of it could be developed by regurgitating requirements from the PRMS SOW [Scope of Work] and other documents." PERSON 2 requested content related to numerous technical designs.

On or about February 16, 2017, Defendant was copied on an email from PERSON 3 to PERSON 2 (who was in China) attached to which were six documents. At least one of the enclosed multi-page technical drawings was controlled under ECCN 8E620.a, and therefore required an export license before being sent to China. Two of these documents had a U.S. government Distribution statement that stated: "Distribution authorized to U.S. government agencies only.

Other requests for this document shall be referred to Commanding Officer, Naval Sea Systems Command (OOC), Arlington, VA 22242." OCEANWORKS willfully shared these documents with Person 2 to assist with the development of its proposal, but OCEANWORKS did not have permission from the U.S. Navy to share these documents.

The Defendant willfully shared and used documents related to the PRMS described above, which documents OCEANWORKS used to assist its development of a presentation to the PLA Navy, and Defendant and OCEANWORKS did so without authorization from the U.S. Navy. The value of the information in issue was less than $1,000.

## DETERMINING THE SENTENCE

"Federal sentencing law requires the district judge in every case to impose 'a sentence sufficient, but not greater than necessary, to comply with' the purposes of federal sentencing, in light of the Guidelines and other § 3553(a) factors." *Freeman v. United States*, 564 U.S. 522, 529 (2011) (citing 18 U.S.C. § 3553(a)). "Rule 11(c)(1)(C) permits the defendant and the prosecutor to agree that a specific sentence is appropriate, but that agreement does not discharge the district court's independent obligation to exercise its discretion." *Freeman*, 564 U.S. at 529.

When weighing the § 3553(a) factors as part of its calculus of an appropriate sentence, the Court should consider not only the nature and circumstances of the offense and the history and characteristics of the defendant, but also the applicable sentencing objectives—that is, that the sentence: (1) reflect the seriousness of the offense; (2) promote respect for the law; (3) provide just punishment; (4) afford adequate deterrence; (5) protect the public; and (6) effectively provide the defendant with needed educational or vocational training and medical care. *See* 18 U.S.C. § 3553(a)(1) and (2). In addition, the sentence should reflect "the need to avoid unwarranted sentence

disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6).

In *United States v. Booker*, 543 U.S. 220 (2005), the Supreme Court ruled that the United States Sentencing Guidelines (U.S.S.G. or Guidelines) are no longer mandatory. However, "[a]s a matter of administration and to secure nationwide consistency, the Sentencing Guidelines should be the starting point and the initial benchmark" for determining a defendant's sentence. *Gall v. United States*, 552 U.S. 38, 49 (2007). The Supreme Court has "recognized that, in the ordinary case, the Commission's recommendation of a sentencing range will 'reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives.'" *Kimbrough v. United States*, 552 U.S. 85, 109 (2007) (quoting *Rita v. United States*, 551 U.S. 338, 350 (2007)).

In *Freeman*, a plurality of the Supreme Court discussed the interplay between a court's acceptance of a plea under Rule 11(c)(1)(C) and the Guidelines:

> Rule 11(c)(1)(C) makes the parties' recommended sentence binding on the court "once the court accepts the plea agreement," but the governing policy statement confirms that the court's acceptance is itself based on the Guidelines. *See* USSG § 6B1.2. That policy statement forbids the district judge to accept an 11(c)(1)(C) agreement without first evaluating the recommended sentence in light of the defendant's applicable sentencing range. The commentary to § 6B1.2 advises that a court may accept an 11(c)(1)(C) agreement "only if the court is satisfied either that such sentence is an appropriate sentence within the applicable guideline range or, if not, that the sentence departs from the applicable guideline range for justifiable reasons." *Cf. Stinson v. United States*, 508 U.S. 36, 113 S.Ct. 1913, 123 L.Ed.2d 598 (1993)(Guidelines commentary is authoritative). Any bargain between the parties is contingent until the court accepts the agreement. The Guidelines require the district judge to give due consideration to the relevant sentencing range, even if the defendant and prosecutor recommend a specific sentence as a condition of the guilty plea.

564 U.S. at 529-30. Accordingly, in this case, the Court should first evaluate the recommended

sentence in light of Defendant's applicable Guideline range. Since the recommended sentence is a departure from the applicable Guideline range, the Court next should determine whether that departure is justified, in the context of its analysis of the factors set forth in 18 U.S.C. § 3553(a).

### A.     United States Sentencing Guidelines Calculation

The government agrees with the Presentence Investigation Report (PSR) that the applicable Guideline range in this case is 6-12 months, based on a total offense level of 10 and a Criminal History Category of I. PSR at ¶ 83. As noted by the PSR, because this sentencing range is within Zone B of the Sentencing Table, the minimum term may be satisfied by something other than a term of imprisonment. *Id.* As noted above, the plea agreement contemplates a sentence of time served and a fine of $25,000. As explained below, based on an analysis of the factors set forth in 18 U.S.C. § 3553(a), the government submits that a departure from the applicable Guideline range is appropriate here.

### B.     Statutory Penalties

Defendant is facing a maximum sentence of 12 months' imprisonment, a fine of not more than $100,000, or both, for his conviction. 18 U.S.C. §§ 641, 3571(b)(5); *see also* PSR at ¶¶ 82, 99. The Court may impose a period of not more than one year of supervised release. Such a term is optional and ordinarily should not be imposed in the case of a deportable alien, such as Defendant, unless required by statute. PSR at ¶¶ 88-91.

### C.     Analysis of 18 U.S.C. § 3553(a) Factors

As discussed below, an analysis of the factors provided in 18 U.S.C. § 3553(a) shows that a sentence of time served and a fine of $25,000 is an appropriate sentence in this case.

#### 1.     The Nature and Circumstances of the Offense

The crime to which Defendant pled guilty-- Misdemeanor Conveyance of Government

Money, Property, or Records to Defendant's Use and to the Use of Others Without Authority, in violation of Title 18, United States Code, Section 641-- is a serious offense. At the same time, it is a misdemeanor, which is less serious than its felony counterpart. The government believes that this crime encapsulates Defendant's criminal conduct in this case.

2.    <u>The History and Characteristics of the Offender</u>

Defendant is a Canadian national who will be immediately subject to removal. Defendant is well educated, with a Bachelor of Applied Science in Engineering Physics, and capable of making a living through non-criminal means, as the government understands he has been doing since his arrest. He also has no prior convictions of which the government is aware.

<b>3.</b>    <u>The Need to Promote Respect for the Law, To Provide Just Punishment, To Afford Adequate Deterrence, and to Protect the Public</u>

Sentencing Defendant to time served and a $25,000 fine will serve the governmental interests in providing a just punishment that sufficiently deters others and protects the public. While the offense was non-violent and is a misdemeanor, the government takes seriously the misuse of U.S. Navy protected technical data. The recommended sentence reflects the significant interests at stake.

4.    <u>The Need to Provide the Defendant with Educational or Vocational Training</u>

Defendant has no need for additional educational or vocational training.

5.    <u>The Need to Avoid Unwarranted Sentencing Disparities Among Defendants with Similar Records Who Have Been Found Guilty of Similar Conduct</u>

The starting point in the Court's analysis under § 3553(a)(6) should be to consider the sentences of "defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). The government notes that Defendant's conduct is no more serious than that

of the defendants in *United States v. Jordan*, 582 F.3d 1239 (11th Cir. 2009). In that case,

Defendant Jordan, an attorney, and his co-defendant, then Sheriff Jimmy Woodward, were charged

with using Sheriff Office employees to access the National Crime Information Center database to

obtain the criminal records of those who voted absentee in the then-recent sheriff's race. *Id*. at

1241-42. Three employees ran the names of 829 persons on the absentee voter list. *Id*. at 1243.

After allegations of misuse of criminal databases in the press, Sheriff Woodward formed a "voter

fraud task force" in an effort to retroactively justify his actions. *Id*. at 1244. Each defendant was

found guilty of conspiracy to violate Section 641, in violation of 18 U.S.C. § 371, and a substantive

violation of Section 641. *Id*. at 1244-45. Each defendant was sentenced to a six-month term of

probation and a $500 fine. *Id*. at 1245. The Eleventh Circuit upheld these sentences as reasonable

even though the Guideline range had been 12 months, finding no abuse of discretion. *Id*. at 1251-

52.

As in *Jordan*, Defendant committed an "isolated crime of short duration," that was

relatively unsophisticated and not violent, and there has been no reported loss to any alleged

victim. *See id*. at 1251. Moreover, similar to Defendant Jordan, Defendant's actions taken after the

U.S. Navy raised questions about access by Chinese nationals or the Chinese government to

OCEANWORKS technology and data—including the voluntary self-disclosure filed by Defendant

on or about March 26, 2018, arguably were designed to cover up or conceal actions taken by him

and others. Unlike in *Jordan*, however, Defendant did not hold a position of public trust. Also

unlike *Jordan*, this case has come to a relatively quick conclusion and did not entail a six-year

defense and public trial. *Cf. id*. At the same time, Defendant saved the government the resources

that would have been necessary to take this case to trial. He also has agreed to pay a much larger

fine than that imposed in *Jordan*. On balance, the conduct seems sufficiently similar to guide this Court.

## **CONCLUSION**

WHEREFORE, the government respectfully recommends that the Court accept the plea agreement and sentence Defendant to a sentence of time served and a fine of $25,000.

JESSIE K. LIU
United States Attorney
D.C. Bar No. 472845

By:

_____/s/_____
Jolie F. Zimmerman
Assistant U.S. Attorney
U.S. Attorney's Office
D.C. Bar No. 465110
jolie.zimmerman@usdoj.gov

Certificate of Service

I HEREBY CERTIFY that a copy of the foregoing Memorandum in Aid of Sentencing was delivered via the Court's electronic filing system on counsel for the defendant, this 22nd day of November, 2019.

_____/s/_____

Jolie F. Zimmerman
Assistant United States Attorney
