**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____

| | |
|---|---|
| **UNITED STATES OF AMERICA** : | |
| : | |
| : | |
| : | |
| **v.** : | **Criminal No. 19-cr-00009 (CKK)** |
| : | **Sentencing Date: December 2, 2019** |
| : | |
| **GLEN OMER VIAU** : | |
| : | |
| : | |
| _____ : | |
| | |
| : | |
| **UNITED STATES OF AMERICA** : | |
| : | |
| : | |
| : | |
| **v.** : | **Criminal No. 19-cr-00304 (CKK)** |
| : | **Sentencing Date: December 2, 2019** |
| : | |
| **OCEANWORKS INTERNATIONAL** : | |
| : | |
| : | |
| : | |
| _____ : | |

## <u>DEFENDANTS' JOINT SENTENCING MEMORANDUM</u>

In accordance with 18 U.S.C. § 3553(a) and Fed. R. Crim. P. 32(i), Glen Omer Viau and

OceanWorks International ("OceanWorks" or the "Company"), through counsel, respectfully urge

the Court to accept the sentences set forth in the defendants' respective Plea Agreements under

Fed. R. Crim. P. 11(c)(1)(C).  Under the Plea Agreements, the Court would impose a sentence of

time served and a fine of $25,000 and no condition of supervised release for Mr. Viau and a fine

of $84,000 for OceanWorks, along with the applicable special assessments.  For the reasons stated

herein, we respectfully submit that these are appropriate sentences under the facts and applicable

law, as well as being consistent with recent guidance from the U.S. Sentencing Commission and in accord with the sentencing recommendations submitted by Crystal S. Lustig, Senior Probation Officer.

In urging the Court to accept the Plea Agreements, we first reiterate the Statements of Offense that accompanied those Agreements.  We reference some additional facts not addressed in the Statements.  Mr. Viau is an engineer who has dedicated his professional life to developing submarine rescue and other undersea technology.  He is a responsible and well-regarded family man, devoted to his wife and young daughter, and an aging father.  As the letters submitted to the Probation Office and to the Court attest, Mr. Viau has a history of integrity, trustworthiness, and a reputation for helping those in need.  He has accepted responsibility for the conduct outlined in his Statement of Offense for permitting the unauthorized use of U.S. Navy drawings to assist in drafting an unsuccessful proposal to build a submarine rescue system for the Chinese Navy.

The submarine rescue system was designed by OceanWorks' predecessor company in Canada some two decades ago.  It is not a warfare system.  Variations on that system were sold by OceanWorks, first to the Australian Navy and then to the U.S. Navy over a decade ago.  Mr. Viau regrets permitting the unauthorized use of the U.S. Navy system drawings.  We submit that the chief harm from that unauthorized use was essentially a risk to the U.S. Navy's intangible rights to control information about its projects and maintain data confidentiality.  We do not wish to minimize the importance of those intangible rights, but we believe the harm was mitigated because we have been advised by knowledgeable former OceanWorks employees that these drawings were not shared with any Chinese individuals (they were shared only amongst OceanWorks' Canadian personnel, including one physically located in China).  The same former employees, both engineers, have advised us that a recipient could not fabricate anything from them.  We submit

that these factors do not excuse Mr. Viau's conduct – but they provide context about the degree of harm.

The sentence set forth in Mr. Viau's individual Plea Agreement varies only from the applicable Guidelines recommendation in terms of the alternatives to incarceration that would otherwise be attendant to a non-incarcerative Zone B Guidelines sentence. Considering Mr. Viau's pretrial incarceration at the D.C. Jail and several months of varying travel restrictions, including spending a month here in Washington following his release from the Jail, the variance contemplated by the agreed sentence is not substantial. A non-incarcerative sentence is also consistent with recent guidance from the Commission for Zone B, first-time non-violent defendants and the factors outlined in 18 U.S.C. § 3553(a). The variance here is also appropriate because Mr. Viau is a foreign national – rendering otherwise applicable and customary non-penal sentencing terms impractical or unavailable. The agreed-upon fine is within the applicable Guidelines range.

The Company acknowledges that its felony offense and conduct are more serious. Subsequent to the Section 641 violation, in the context of winding down its operations, OceanWorks submitted a voluntary disclosure to the U.S. Department of Commerce falsely stating that its technology was not subject to further re-export and omitting that OceanWorks made a proposal to the Chinese Navy. The Company admits that its disclosure should have been more fulsome, but the agreed-upon sentence of an $84,000 fine is fully within the applicable Guidelines range, and is a reasonable and appropriate sentence. What is more, OceanWorks is a foreign company that has essentially ceased operations and only exists to wind up outstanding affairs, chiefly this matter.

Mr. Viau and counsel have reviewed the Presentence Investigation Reports ("PSRs") prepared by Senior United States Probation Officer Crystal S. Lustig. Canadian counsel for the company has also reviewed the corporate PSR. We have no material objections to the facts set forth in the PSRs or their Guidelines calculations. The Probation Office recommends accepting the agreed-upon sentences set forth in the Rule 11(c)(1)(C) pleas. We respectfully submit that, as recognized by the Probation Office, the relevant sentencing factors weigh in favor of the Court accepting the Rule 11(c)(1)(C) pleas and imposing the agreed-upon sentences set forth therein.

## BACKGROUND

Mr. Viau and OceanWorks will appear before the Court for sentencing on December 2, 2019. Mr. Viau entered his guilty plea on September 10, 2019, to the Superseding Information, which charged him under 18 U.S.C. § 641 with conveying, without authority, a thing of value of the United States to another, a misdemeanor because the value was less than $1,000. That same day, OceanWorks pleaded guilty to one count of violating 18 U.S.C. § 1001, namely, for having made false statements and omissions in a voluntary disclosure submission to the U.S. Department of Commerce.

The underlying facts for both pleas are described in the respective Statements of the Offense accompanying the two Plea Agreements and recounted in the PSRs. In sum, OceanWorks designed and manufactured a submarine rescue system for the U.S. Navy that was delivered in 2008. OceanWorks retained commercial rights in its designs, and the U.S. Navy retained certain rights in its data, including the right to keep the data confidential. Mr. Viau left OceanWorks in 2011, and in 2016, during a time when Mr. Viau was not affiliated with the company, OceanWorks' former parent company sold it (the Canadian subsidiary) to Chinese investors. As the sale was being consummated, the Chinese investors reached out to Mr. Viau and asked him to

return to the company as President.  Mr. Viau did so after the sale had been completed.  He returned to a company with depleted staff, poor morale, and a long to-do list due to the prior parent company's neglect and mismanagement.  Mr. Viau set out to rebuild OceanWorks, repair customer relationships, and pursue new business opportunities, including a new proposal for the Australian Navy.

In the fall of 2016, OceanWorks learned of an opportunity to bid on a submarine rescue system project for the Chinese Navy, which Mr. Viau believed was a long-shot because a UK company was the incumbent, having recently sold a rescue vehicle to the Chinese Navy. OceanWorks nonetheless pursued the opportunity, and in doing so, Mr. Viau allowed the use of drawings from OceanWorks's project with the U.S. Navy, without its permission, in order to assist OceanWorks in drafting a proposal for a similar system for the Chinese Navy.  Specifically, he permitted drawings to be emailed to an OceanWorks employee physically located in China.[1] Ultimately, the incumbent UK company – not OceanWorks – won the contract.  OceanWorks shortly thereafter was advised by the Canadian government that it did not approve of the sale to the Chinese investors and that it needed to divest.  OceanWorks began winding down its business operations,[2] and it filed a final voluntary disclosure submission in March 2018 that disclosed a larger re-export of U.S. Navy (and other) data by prior management but then falsely represented that there were no other instances in which OceanWorks had exported U.S. Navy technology,

---

[1] The OceanWorks representative directly involved, a Canadian, has confirmed to counsel that the drawings were not in fact transmitted to any Chinese nationals and further advised that the drawings were not detailed enough to enable recipients to manufacture the technology on their own.  Other former OceanWorks personnel interviewed by counsel have corroborated this information.

[2] OceanWorks searched for a suitable buyer, but was unable to find one and so the business lines were sold off separately.  Mr. Viau and his wife bought the dive suit line, which is not at issue in this case.

omitting the unauthorized use of U.S. Navy documents to support the Chinese Navy proposal in early 2017.

Mr. Viau was indicted in this District in a sealed indictment for violating 18 U.S. C. § 1001.  He was arrested on January 8, 2019, as he was transiting in the Houston airport, returning to Vancouver from a holiday vacation in Mexico with his family.  His nine year old daughter, elderly father, and wife watched while Mr. Viau was arrested.  Mr. Viau was transferred to the D.C. Jail and held for 8 days.  Eventually, Mr. Viau was released on January 15, 2019, after posting a $50,000 cash bond.  After Mr. Viau's release, he was required to remain in the Washington, D.C., area until the conditions of his release were relaxed a month later on February 15, 2019.  Mr. Viau was then permitted to return to his home in Vancouver but was restricted from traveling outside of Vancouver until June 24, 2019 when the Court permitted him to travel within Canada to visit family and to certain designated European countries for business reasons.  He was unable to travel to visit customers in China until after he entered his guilty plea on September 10, 2019.  During the pendency of the case, Mr. Viau agreed to searches of various technology items and also consented to a brief interview with the government.  Eventually, Mr. Viau and OceanWorks, through counsel, were able to negotiate with the government a resolution of this matter, detailed in the Plea Agreements.

## APPLICATION OF STATUTORY SENTENCING FACTORS

18 U.S.C. § 3553(a) requires federal courts to impose sentences that are "sufficient, but not greater than necessary."  *Accord United States v. Williamson*, 83 F. Supp. 3d 394, 404 (D.D.C. 2015).[3]  The primary directive of § 3553(a) is the imposition of a sentence that is sufficient, but

---

[3] The Court is well familiar with the post-*Booker* sentencing standards and they will not be repeated here unnecessarily.  See generally *United States v. Booker*, 543 U.S. 220 (2005).

not greater than necessary, to comply with the purposes articulated in § 3553(a)(2), namely:

(A)     to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B)     to afford adequate deterrence to criminal conduct;

(C)     to protect the public from further crimes of the defendant; and

(D)     to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

In determining a minimally sufficient sentence, § 3553(a) further directs sentencing courts to consider the following factors:

1)     the nature and circumstances of the offense and the history and characteristics of the defendant (§ 3553(a)(1));

2)     the kinds of sentences available (§ 3553(a)(3));

3)     the advisory sentencing guidelines range (§ 3553(a)(4));

4)     any pertinent policy statement issued by the Sentencing Commission (§ 3553(a)(5));

5)     the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct (§ 3553(a)(6)); and

6)     the need to provide restitution to any victims of the offense. (§ 3553(a)(7)).

*Accord Williamson*, 83 F. Supp. 3d at 401.  Pursuant to the applicable sentencing Guidelines and the § 3553(a) considerations in this matter, we respectfully submit that those factors all support the imposition of the agreed-upon sentences for Mr. Viau and OceanWorks.

## THE SENTENCING GUIDELINES CALCULATIONS (18 U.S.C. § 3553(a)(4))

A. Guidelines Calculations for OceanWorks

As stated in the PSR, the following Guidelines calculation and culpability score is applicable for OceanWorks under the 2018 United States Sentencing Guidelines:

| | |
|---|---|
| Base Level | 6 |
| Specific Offense Characteristics | 6 |
| | |
| Total Offense Level and Range | 12 |
| | |
| | |
| Starting Culpability Score | 5 |
| Involvement/Tolerance | 1 |
| Acceptance of Responsibility | (1) |

| | |
|---|---|
| Total Culpability Score | 5 ($70,000 - $140,000) |

*See* OceanWorks PSR ¶¶ 46-49, 55-63.

We note that, if the Court accepts the plea, OceanWorks will immediately pay the $84,000 fine, which falls within the applicable Guidelines range, and the $400 special assessment. As such, and given that it is no longer an operating entity and is a foreign entity not subject to ordinary supervision, we respectfully submit that a term of probation in addition to the fine is not required, *see* 18 U.S.C. § 3551(c)(1) and (2) ("or"); *accord* U.S.S.G. § 8D1.1 (noting that probation is required if certain conditions exist, none of which would be presented if OceanWorks pays its fine in full at the time of sentencing—which it is fully prepared to do). The Probation Office's recommendation agrees.

B. Guidelines Calculations for Mr. Viau

As set forth in the Plea Agreements, and confirmed in Mr. Viau's individual PSR, the following Guidelines calculation is applicable for Mr. Viau under the 2018 United States Sentencing Guidelines:

| | |
|---|---|
| Base Level | 6 |
| Specific Offense Characteristics | 6 |
| Acceptance of Responsibility | (2) |
| | |
| Total Offense Level and Range | 10 (6-12 months) |

*See* Viau PSR ¶¶ 33-41, 83. Mr. Viau lacks any Criminal History points, *see id.* ¶¶ 44, and falls into Zone B of the Guidelines. As a nonviolent first offender within Zone B, Mr. Viau is within the ambit of the most recent Guidelines amendments and commentary from the Sentencing Commission, which encourage sentencing courts to consider imposing sentences other than imprisonment for such defendants. *See* U.S.S.G. §5C1.1 (comment n. 4) (effective Nov. 1, 2018). The Commission explained the new amendment as follows:

This new application note is consistent with the statutory language in 28 U.S.C. § 994(j) regarding the 'general appropriateness of imposing a sentence other than imprisonment' for 'a first offender who has not been convicted of a crime of violence or an otherwise serious offense' and cites the statutory provision in support.

U.S. Sentencing Commission, Amendments to the Sentencing Guidelines, at 73 (Apr. 30, 2018).

As such, we believe that the time served sentence reflected in Mr. Viau's individual Plea Agreement is consistent with recent Commission commentary and policy—particularly where Mr. Viau has actually served more than a week in incarceration, a month of release conditions that required him to live in the Washington, D.C., metro area, and four additional months of release conditions that required him to remain in Vancouver.  Given his time in jail, and a month of restricted release in the DC area, the agreed-upon sentence is not a substantial variance from the substitution of sentence terms for Zone B sentences.  We also note that because Mr. Viau is a foreign national, imposition of one of the substitute terms is not a meaningful option, further supporting the sentence set forth in the Plea Agreement.[4]  Again, the Probation Office's recommendation agrees.  Consistent with the issues discussed above for the company, Mr. Viau intends to pay his $25,000 fine, which is within the applicable Guidelines recommendation, and $25 special assessment immediately from the $50,000 bond funds currently on deposit with the Court.[5]

---

[4] Similarly, in a case involving an incarceration scenario, which we respectfully maintain this is not, Mr. Viau would face more stringent incarcerative conditions and be automatically ineligible to participate in certain BOP programs that would otherwise normally facilitate an appropriate and customary earlier release to the community.  *See* Federal Bureau of Prisons, Program Statement 5100.08, CN-1: Inmate Security Designation and Custody Classification, Ch. 2-9 (Sept. 4, 2019). *Accord United States v. Smith*, 27 F.3d 649, 651 (D.C. Cir. 1994) (recognizing departure due to foreign defendants' disqualification for certain BOP classifications and programs).  These same issues render other customary non-penal sentencing terms impractical—hence the Plea Agreement position that supervised release should not be imposed.

[5] Assuming the Court accepts the plea tendered by the parties, we are submitting a proposed order to facilitate application of the bond funds to pay the fine and special assessment, with the $24,975

## SECTION 3553(a) FACTORS.

Following *Booker*, the D.C. Circuit has stated that the Guidelines are no longer binding sentencing edicts, "but rather are one factor that a district court must consider when imposing a sentence." *United States v. Gardellini*, 545 F.3d 1089, 1092 (D.C. Cir. 2008).  Pursuant to 18 U.S.C. § 3553(a)(2), the sentencing court must impose a sentence that is minimally sufficient to achieve sentencing goals based on all of the § 3553(a) factors present in a case.  This so-called parsimony provision serves as the "overarching instruction" of the statute.  *See Kimbrough v. United States,* 552 U.S. 85, 111 (2007).  A sentencing court has unique competence to make the "defendant-specific determinations" relevant to the § 3553(a) analysis.  *Gardellini,* 545 F.3d at 1095.  We respectfully submit that the § 3553(a) factors present in the defendants' cases demonstrate that the agreed-upon sentences in the Plea Agreements under Rule 11(c)(1)(C) are reasonable and appropriate, provide just punishment, offer adequate deterrence, and recognize the unlikelihood of defendants' recidivism.

A.    Mr. Viau's history and characteristics justify a lenient sentence

A defendant's history and characteristics are important factors for the sentencing court's consideration.[6]  Mr. Viau does not take lightly the gravity of his offense conduct.  But Mr. Viau's

---

balance to be refunded to Mr. Viau.  A form of a proposed order is attached hereto as Exhibit I.

[6] *See Rita v. United States,* 551 U.S. 338, 364-65 (2007) (Stevens, J., concurring) ("Matters such as age, education, mental or emotional condition, medical condition (including drug or alcohol addiction), employment history, lack of guidance as a youth, family ties, or military, civil, charitable, or public service are not ordinarily considered under the Guidelines.  These are, however, matters that § 3553(a) authorizes the sentencing judge to consider.") (citations omitted); *see United States* v. *Preacely*, 628 F.3d 72, 84 (2d Cir. 2010) (Lynch, J., concurring) ("[Section 3553(a)(1)] requires sentencing courts to treat the Guidelines only as a starting point, and then to craft an appropriate sentence taking full account of 'the history and characteristics of the defendant.'").

offense conduct tells only part of his story, as the numerous accompanying letters in support of Mr. Viau and the additional information set forth in the PSR demonstrate.[7]

Mr. Viau grew up in a stable, middle class family in Halifax, Nova Scotia, Canada.  He is 52 years old.  His father was a mechanical engineer, and is still living independently in Nova Scotia at the age of 90.  Mr. Viau's mother was a teacher; she passed away from ovarian cancer in 2015 at the age of 76.  Mr. Viau was the middle son of three brothers: Paul, 53, lives in Nova Scotia and works as a photographer, and Marc, 50, lives in Williston, Vermont and works as a mechanical engineer.  Mr. Viau had a happy childhood, and he spent most of his free time on the water – boating, sailing, and teaching sailing.  Following his graduation from high school, Mr. Viau moved to Vancouver to continue his education, graduating with a degree in Engineering Physics from the University of British Colombia.

After University, Mr. Viau began working at OceanWorks' predecessor company as a project engineer.  While Mr. Viau was still relatively junior, company management did a buy-out, and formed OceanWorks, which became the Canadian subsidiary of a Houston-based company. Mr. Viau gradually rose through the ranks and eventually became Chief Operating Officer. OceanWorks (the subsidiary) was a good company that valued hard work and innovation, and built a reputation for doing quality work and being consistent.  Mr. Viau was proud of his role in growing the company and developing the talent of its engineers.  But, relations were strained with the American parent company.  In 2011, after several quarters of frustration, Mr. Viau made the difficult decision to leave OceanWorks – where he had spent his entire career, developed many

---

[7] The accompanying letters from Mr. Viau's family and friends are collected as Exhibits A-H. These letters have been redacted in accordance with Fed. R. Crim. P. 49.1.  Undersigned counsel has retained the originals and will provide them to the Court or government counsel upon request. Some documents were sent to counsel electronically so a PDF or fax version is the only "original" in our possession.

important relationships (including meeting his wife), and designed rescue and other underseas technology that he was rightly proud of. He took a year off and then spent three years at an oil and gas company in Houston before returning to build a home on Gambier Island outside of Vancouver. In the Fall of 2016, after a Chinese investor bought OceanWorks from its American parent company, Mr. Viau returned to OceanWorks as the President. It was in this context that the conduct before the Court occurred.

Mr. Viau met his wife when they worked together at OceanWorks. They have a "bright and extraordinary" nine year old daughter, and Mr. Viau is a devoted and "remarkably engaged parent," and can regularly be found tackling various projects with her, including building a robot— apparently another generation of Viau family engineers in the making. *See* Exhibit D (Wainwright Letter) and Exhibit E (Youck Letter); *see also* Exhibit A (Clearwater Letter); Exhibit B (Foy Letter); Exhibit G (Giesbrecht Letter). The letters demonstrate that Mr. Viau is dedicated to his extended family as well, including his father, brothers, and nieces and nephews – including a nephew named after Mr. Viau. *See* Exhibit F (Young Letter, filed under seal). According to Mr. Viau's sister-in-law, Mr. Viau was the glue binding the family together during his mother's treatment for ovarian cancer in 2015 and after her death. *See* Exhibit F (Young Letter, filed under seal). His sister-in-law went on to describe how, in 2016, Mr. Viau dropped everything and visited Vermont within days of her raising certain concerns about other family matters. As she described Mr. Viau, "Family is everything to him, as it was to [his mother]." *See* Exhibit F (Young Letter, filed under seal).

As is the case with any prosecution, this matter has exacted a toll on Mr. Viau's family, particularly his wife and daughter, who is "inconsolable when he returns to the United States out of fear for the future." Exhibit B (Foy Letter); *see also* Exhibit A (Clearwater Letter); Exhibit C

(Strgar Letter); Exhibit D (Wainwright Letter); Exhibit E (Youck Letter); Exhibit G (Giesbrecht Letter).

Other than the conduct before the Court, Mr. Viau has been a law-abiding person his entire life and has earned a reputation for integrity, both at work and in his community. *See* Exhibit A (Clearwater Letter); Exhibit B (Foy Letter); Exhibit C (Strgar Letter); Exhibit E (Youck Letter); Exhibit G (Giesbrecht Letter); Exhibit H (Santha Letter). He is also known for taking pride in his work and being a good boss, who mentored young people who are pursuing engineering. *See* Exhibit A (Clearwater Letter); Exhibit D (Wainwright Letter); Exhibit E (Youck Letter). Mr. Viau is also dedicated to helping neighbors in his rural island community, a fact repeatedly illustrated in the letters. As one neighbor described, "Glen is always ready to come out and tow your broken down boat, help chop down your hazard tree, or share groceries when weather delays alter your travel plans." He is "frequently one of the first neighbours to step up and make sure anyone who needs help is assisted" and he is "trusted, respected and relied upon by many." Exhibit A (Clearwater Letter); *see also* Exhibit C (Strgar Letter); Exhibit D (Wainwright Letter); Exhibit E (Youck Letter); Exhibit G (Giesbrecht Letter).

Excepting the matters before the Court, Mr. Viau has lived an honest and honorable life, including helping develop the rescue technology at the heart of this case and supporting his family and community. His decision to permit the use of U.S. Navy documents to support a proposal to the Chinese Navy was wrong and reflects poor judgment on his part, but it stands in sharp contrast to the way he has lived his life for decades, and those who have watched him struggle with these charges over the past year believe he has demonstrated true remorse for his actions. *See* Exhibit C (Strgar Letter); Exhibit G (Giesbrecht Letter); Exhibit H (Santha Letter).

B.      The nature and circumstances of the offense justify the agreed-upon sentences

Defendants acknowledge the seriousness of the offenses that they committed, but the specific nature and circumstances of their offenses support the agreed-upon sentences. As described above, to put the offense conduct in a context, Mr. Viau was facing numerous challenges, including restoring employee morale, repairing customer relationships, responding to a Canadian Government review of the new Chinese ownership, and pursuing new business opportunities, most notably a major opportunity with the Australian Navy. These are not excuses, however, and Mr. Viau has acknowledged that OceanWorks' use of the U.S. Navy documents to support development of the Chinese Navy proposal and the Company's deficient voluntary disclosure submission was wrong. We have discussed earlier certain factors we believe illuminate important context in assessing the nature of his conduct, *e.g.*, the drawings were not actually transferred to a Chinese national and, consistent with the elements of the misdemeanor offense, lacked significant financial value to the U.S. Navy or practical value in terms of providing sufficient detail to manufacture the technology. The "why" for this conduct is, of course, a factor and, here, we submit that as Mr. Viau was rebuilding the company, he took actions he was able to rationalize because of the shared ownership of aspects of the drawings, their relatively insignificant value, and that the company intended to seek appropriate permissions and export permits if it ultimately won the proposal, which it did not. But, again, we do not offer that perspective as an excuse. We respectfully submit that any harm from Mr. Viau's offense of allowing drawings to be transferred from one OceanWorks employee to another in support of developing the Chinese Navy proposal was minimal, which supports a sentence of time served and the $25,000 fine.

14

Likewise, the Company's fine is justified based on the nature and circumstances of its offense and completely consistent with the Guidelines. At the time of the voluntary disclosure, the Company was in wind down mode, and having not heard anything from the U.S. Department of Commerce after the initial voluntary disclosure, the Company wrongly treated the completion and submission of the remaining final disclosure as *pro forma*. Moreover, Canadian counsel has advised us that the Company's conduct did not violate any Canadian export laws. Finally, the Company still only exists to wrap up its affairs, a fact supporting the $84,000 fine.

  C. <u>The objectives of § 3553(a)(2) are satisfied by the agreed-upon sentences</u>

The agreed-upon sentences for OceanWorks and Mr. Viau are consistent with the sentencing objectives set forth in 18 U.S.C. § 3553(a)(2). We certainly agree that their conduct cannot be countenanced. Mr. Viau now has a criminal record and has been punished, including a period of imprisonment. He has experienced substantial negative impact personally and professionally as a result of his actions. Considering those facts, coupled with the fact that the respective fines represent a significant amount of money for both Mr. Viau individually and for the defunct Company, the sentences offer sufficient punishment and deterrence for both defendants and are largely consistent with the applicable Guidelines.

Mr. Viau has complied with his release conditions (setting aside two mix-ups in checking in), appeared for every court date as required and cooperated with the Probation Office and with requests by the government. He is not a man who is likely to re-offend; rather, this is a man who is working hard to regain the trust of his business community and who hopes to again lead a quiet, honorable life. Further incarceration of Mr. Viau is unnecessary to promote specific deterrence here because his previous incarceration and liberty restrictions as well as the agreed-upon sentence are sufficient.

Further, the goal of general deterrence for others who might be inclined to commit similar crimes does not require Mr. Viau's further incarceration.  The fact that this conduct was charged and prosecuted and widely covered in the media plainly sends a robust message to the public that unauthorized use of U.S. government property – even intangible interest – has profound consequences and, perhaps more importantly, that voluntary disclosure submissions must be complete and accurate.  In sum, the agreed-upon sentences reflect the seriousness of the offenses and provide just punishment.

**CONCLUSION**

For the foregoing reasons, we respectfully ask the Court to impose the agreed-upon sentences of a $84,000 fine for OceanWorks and a $25,000 fine for Mr. Viau, in addition to a sentence of time served.  Mr. Viau, despite the conduct that brings him before the Court, has long been and can again be an honorable and productive member of society.  Mr. Viau and OceanWorks have taken responsibility for their misconduct, but, as documented in the attached letters, Mr. Viau's conduct is contradicted sharply by the character of a man that his family and community rely upon and love and respect.  Mr. Viau and OceanWorks have already paid a heavy price for their mistakes, and we respectfully urge the Court to consider the unique facts in this case, the sentencing factors and Guidelines, the Probation Office's recommendations and accept the sentences set forth in the Plea Agreements.

Respectfully submitted,


_/s/ Preston Burton_____

Preston Burton (D.C. Bar No. 426378)
Paige Ammons (D.C. Bar No. 1001493)
Buckley LLP
2001 M Street N.W., Suite 500
Washington, D.C. 20036

Telephone: (202) 349-8000
Email: pburton@buckleyfirm.com

Counsel for Glen Omer Viau
and OceanWorks

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 22nd day of November 2019, I caused a true and correct copy of the foregoing Joint Sentencing Memorandum of Defendants Glen Omer Viau and OceanWorks International, to be filed with the Clerk of Court using the CM/ECF filing system.


  /s/ Preston Burton_____

Preston Burton (D.C. Bar No. 426378)
Buckley LLP
2001 M Street N.W., Suite 500
Washington, D.C. 20036
Telephone: (202) 349-8000
Email: pburton@buckleyfirm.com